El Pueblo de Puerto Rico, demandante y apelado, *v.* Arístides Ayala, acusado y apelante.

Núm. 6826.—*Sometido:* Enero 21, 1938. *Resuelto:* Febrero 25, 1938.

*E. Pérez Casalduc,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Arístides Ayala fué acusado del delito de portar ilegalmente un revólver. Condenado a la pena de dos meses de cárcel y al pago de las costas apeló para ante esta Corte Suprema. Examinaremos solamente uno de los errores que en su alegato imputa a la corte inferior, a saber:

 Erró la Corte sentenciadora al apreciar la prueba de cargo y al concluir que ella es suficiente para establecer la culpabilidad del acusado.

La evidencia aportada por el fiscal puede resumirse así:

Alfredo Fabián, policía insular, declaró que el 14 de marzo de 1936 prestaba servicio en Manatí; que encontrándose esa noche en el balcón del cuartel oyó cinco detonaciones, pudiendo desde donde estaba ver los fogonazos, pero sin poder precisar si los disparos se hacían desde dos sitios distintos; que fué al sitio acompañado del cabo de la policía y encontró allí dos heridos, uno Rafael Arce y el otro Arcadio

Fernández. Inmediatamente después de esta parte del interrogatorio de este testigo, el examen continuó así:

"P. ¿Ayudó a llevarlo al hospital?—Sí, señor.

"P. ¿Manifestó algo Arcadio Fernández en el momento en que llegó?

"Abogado. Me opongo. No se han sentado las bases.

"P. ¿Cuánto tiempo después de haberse terminado las detonaciones fué al sitio?—Casi seguido.

"P. ¿A Arcadio Fernández cómo lo encontró?—Herido.

"P. ¿Qué hizo él?—Me han herido, dijo.

"P. ¿Dijo quién lo había herido?—En ese momento no.

"P. ¿Cuándo hizo las manifestaciones?

"Abogado. Ya ve que en el momento no dijo.

"Hon. Juez. Si es con tiempo que sea elevado la Corte lo elimina (sic).

"Abogado. Excepción.

"Testigo. Dice él: Me han herido.

"P. ¿Lo llevó al hospital?—Sí, señor.

"P. ¿Cuánto tiempo tardó en ir al hospital?—Cinco minutos lo menos.

"P. ¿En el camino manifestó algo?

"Abogado. Me opongo.

"Hon. Juez. Se admite.

"Abogado. Excepción. Que se oiga que en el momento no decía nada.

"Testigo. Entonces fué que dijo que había sido Arístides.

"P. ¿Dónde?—¿En el trayecto?—En el hospital.

"P. ¿Cómo dijo?—No dijo el apellido, Arístides.

"P. ¿Lo conoce?—El señor sentado ahí (el acusado).

"P. ¿Se refería a él?—No lo sé."

En este punto del interrogatorio la corte increpa al testigo diciéndole que la policía no debe venir a hacer favores y que la corte cree que el testigo favorece al acusado como declara. El testigo ratificó lo que ya había declarado, diciendo: "Sí señor; sin decir el apellido, y tengo una declaración jurada que está en Corte." Y continuó declarando que él no arrestó a nadie; y que supo después que habían arrestado al acusado.

Benito Pérez, policía insular, declaró que al oír los disparos acudió al sitio y allí encontró a Arcadio Fernández (a) Malas Noches; que éste al correr abrió los brazos y el testigo lo vió herido por la tetilla izquierda; que él le preguntó: "Quién te hirió", y el herido contestó: "Arístides Ayala; nos tiramos él y yo y él me hirió"; que allí no llegó ningún otro policía en ningún momento; que él cogió al herido y con dos o tres más lo llevaron cargado al hospital; que él no arrestó al acusado; que el herido murió como dos o tres meses después, como consecuencia de unos tiros que hubo en el barrio "Monte Bello", y que lo mató un policía.

El fiscal ofreció entonces la declaración de un perito médico para demostrar que Arcadio Fernández había sido herido. Se opuso la defensa por el fundamento de que su nombre no aparece en la acusación como testigo de cargo y además porque dicho perito estuvo presente en el juicio y oyó declarar a los testigos de cargo que le precedieron. La corte admitió la declaración "porque tiende a corroborar en parte la declaración de los policías de que el herido manifestó que el acusado era quien lo había herido." Y la defensa anotó su excepción. Declaró el doctor Juan A. Pons al efecto de que él había examinado al herido; que éste presentaba una herida de bala; y que le había extraído el plomo ofrecido por el fiscal como evidencia de que la herida había sido inferida con un arma mortífera.

En defensa del acusado se ofreció la siguiente prueba:

Antonio Vázquez Laureano, declaró: que iba con Rafael Arce en el momento en que sonaron unos tiros; que se pararon y vieron a Arcadio (a) Malas Noches y otro hombre que se entraron a tiros y un hombre alto de camisa oscura lo corrió y Arcadio corrió para atrás disparando tiros e hirió a Rafael Arce; que conoce a Arístides Ayala, el acusado; que la otra persona que disparaba no era Arístides Ayala.

Para impugnar la veracidad de este testigo, el fiscal le preguntó si cuando él declaró ante el juez municipal ya sabía que Arístides Ayala había sido arrestado, a lo que el testigo

contestó afirmativamente. Siguió preguntando el fiscal: "¿Por qué, sabiendo que el acusado había sido ya arrestado por estos hechos, usted no le dijo al juez municipal en su declaración, que él no era la otra persona que iba corriendo con un revólver"? Se opuso la defensa, alegando que sólo podía admitirse prueba que estuviese en contradicción con lo declarado por el testigo en el acto del juicio. Intervino entonces la corte, preguntando al testigo:

"P. ¿Cómo si no pudo reconocer la persona que disparó, sabe que no era Arístides Ayala?

"Testigo. Si hubiera sido Arístides Ayala lo conozco, porque lo conozco de anterior, pero al individuo que era no lo conocía anteriormente y no puedo decir quién era y solamente le vi la ropa."

Y continuó el testigo declarando que no había dicho al juez municipal que el acusado no era el que había hecho los disparos porque el juez no se lo preguntó.

La declaración prestada por este testigo ante el juez municipal es idéntica a la prestada en el acto del juicio. No encontramos que exista entre ellas discrepancia o contradicción alguna que pueda servir de base para impugnar la declaración prestada en el juicio o para desacreditar al testigo. El hecho de que el testigo no informase al juez municipal que Ayala no era la otra persona que había disparado, sobre lo cual el juez no le preguntó, es una omisión tanto del juez investigador como del testigo pero no una contradicción de este último que pueda afectar su veracidad.

Rafael Arce, declaró substancialmente lo mismo que Antonio Vázquez, y que conocía a Arcadio Fernández como a sus propias manos. Al preguntarle el abogado defensor si después de la fecha del suceso había él hablado con Arcadio Fernández, se opuso el fiscal por no ser esa conversación parte del hecho (*res gestae*). Alegó la defensa que habiéndose admitido las declaraciones hechas por Fernández momentos después de ser herido, las declaraciones contradictorias hechas por él posteriormente eran también admisibles

para impugnar su veracidad. Sostuvo la corte la oposición del fiscal, con excepción de la defensa.

Siguió declarando el testigo, que no vió allí a Arcadio Fernández; que lo vió cuando corrió, pero no lo vió que disparara ni al testigo ni a nada; que lo vió cuando él, el testigo, cayó al suelo herido; que no vió a Arístides Ayala.

El fiscal presentó al testigo la declaración prestada por él ante el juez municipal. El testigo después de leerla reconoció que ésa era su declaración. En ella dijo el testigo: "que al poco rato el declarante se sintió herido, pero no sabe quien lo hirió. Tampoco vió por allí a Arcadio Fernández ni a Arístides Ayala." Con la oposición de la defensa, la corte admitió la declaración ofrecida para desacreditar al testigo. Y se anotó la excepción del acusado.

Hemos leído cuidadosamente la declaración prestada por el testigo ante el juez municipal y no encontramos que ella difiera de o contradiga la prestada en el acto de la vista en cuanto al punto substancial que se investigaba, o sea si Arístides Ayala, el acusado, estaba en el sitio y en el momento donde y en que ocurrieron los disparos. Ambas declaraciones son idénticas en cuanto a ese extremo. El testigo declaró en ambas ocasiones que no había visto allí al acusado.

Terminó la vista del caso con el siguiente incidente:

Pidió la defensa que se citara al taquígrafo para que leyese las manifestaciones del fiscal al solicitar el archivo de la causa seguida contra el acusado por el delito de atentado a la vida. Se opuso el fiscal. Resolvió la corte que lo dicho por el fiscal en otro caso no era admisible como prueba en el de portar armas, y, "además, porque lo único que dijo el fiscal fué: que no tenía pruebas para un caso de atentado a la vida." La defensa hizo constar su excepción.

Descartando la prueba ofrecida por la defensa y considerando exclusivamente la aducida por el fiscal, encontramos que la única evidencia tendiente a conectar al acusado con la comisión del delito que se le imputa es prueba de referencia, la cual, aunque correctamente admitida por la corte senten-

ciadora como parte del *res gestae* no es por sí sola suficiente, a nuestro juicio, para justificar una sentencia de culpabilidad. Tanto más si se tiene en cuenta que Arcadio Fernández, la persona que se dice hizo las manifestaciones que tendían a inculpar al acusado, había ya fallecido en la fecha de la celebración del juicio. No aparece del récord prueba alguna que tienda a corroborar las declaraciones que se dice fueron hechas por el herido a los dos policías. Véase: *Williams* v. *State,* (11 Ga.. App. 662) 75 S. E. 988, que sostiene que declaraciones de referencia, aun cuando sean admisibles como parte del *res gestae,* no son suficientes para condenar, a menos que haya algún hecho esencial establecido por otra evidencia.

En tal virtud, y atendidas todas las circunstancias de este caso, *debe revocarse la sentencia y absolverse al acusado.*

El Juez Asociado Señor Córdova Dávila no intervino.